# In the United States Court of Federal Claims

No. 15-336 C
Filed: September 30, 2015

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*
ROCKY MOUNTAIN HELIUM, LLC,    \*
                               \*
        Plaintiff,             \*        Jurisdiction,
                               \*            28 U.S.C. § 1346;
                               \*        Motion To Dismiss,
v.                             \*            RCFC 12(b)(1),
                               \*            RCFC 12(b)(6);
THE UNITED STATES,             \*        Tucker Act,
                               \*            28 U.S.C. § 1346(a)(2),
        Defendant.             \*            28 U.S.C. § 1491.
                               \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**David B. Bush**, DavidLaw, LLC, Wheat Ridge, Colorado, Counsel for Plaintiff.

**Renee A. Gerber**, United States Department of Justice, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN**, *Judge*.

## I.    RELEVANT FACTUAL BACKGROUND.[1]

On June 24, 1994, Rocky Mountain Helium, LLC ("Rocky Mountain") and the United States Department of Interior's Bureau of Land Management ("Interior"), entered into Federal Helium Contract No. FLL 94-001 ("Helium Contract") to "conserve and extract the helium component of the gas stream produced from oil and gas wells" on 21,522.44 acres in western Colorado.  Compl. ¶¶ 11–14.

Pursuant to the Helium Contract, Rocky Mountain was required to pay an annual rent of either one dollar per acre or royalties of equal or greater.  Gov't App. A3–5; Compl. ¶ 14.  The minimum annual rent was $21,522.44.  Compl. ¶ 14.  In the event that Helium Contract was terminated by Interior, Rocky Mountain nevertheless had preferential rights for one year, if Interior decided to enter into a new agreement.  Gov't App. A5.

---

[1] The facts discussed herein were derived from:  the April 1, 2015 Complaint; the Appendix to the Government's July 13, 2015 Motion To Dismiss ("Gov't App. A1–A26"); and the June 5, 2003 First Administrative Modification of Contract ("Court Exhibit A").

During August 1, 1994 through July 31, 1995, Rocky Mountain paid Interior $500.00 plus the first annual rent payment of $21,522.44, pursuant to the Helium Contract.  Compl. ¶ 16. Sometime in 1994 and through 2009, Rocky Mountain also attempted to negotiate a contract to extract helium from properties held by other federal oil and gas lessees.  Compl. ¶ 20.  According to Rocky Mountain, Interior never assisted or cooperated in that effort.  Compl. ¶ 22.  As a result, Rocky Mountain never made any rent payments after July 31, 1995 and was in default on August 31, 1996.  Gov't App. A3.

On June 5, 2003, however, Rocky Mountain and Interior entered into a First Administrative Modification of the Helium Contract[2] authorizing Rocky Mountain to extract helium on nearly one million additional acres in western Colorado and eastern Utah.  Court Exhibit A; Compl. ¶ 24. But, the June 5, 2003 First Administrative Modification provided that it would not be effective unless Rocky Mountain made "payment in full of all accrued rentals, penalties and interest within 90 days of the date both parties have executed these modifications[.]"  Court Exhibit A at 2.  Rocky Mountain, however, never made any payments to Interior under the First Amendment Modification  Compl. ¶ 22.  As such, the First Administrative Modification became ineffective.

On December 29, 2004, Interior notified Rocky Mountain that it cancelled the Helium Contract for non-payment.  Gov't App. A12.  In January 2005, Rocky Mountain filed an administrative appeal of that notice with the Civilian Board of Contract Appeals ("CBCA"). Compl. ¶ 26; Gov't App. A12.

On August 29, 2008, Rocky Mountain and Interior entered into a Settlement Agreement, whereby, within 30 days after execution, Interior was required to provide Rocky Mountain with data about the composition of gases, including helium, located on specified land of the federal oil and gas lessees.  Gov't App. A12–21.  The requested data would reveal whether enough helium existed to justify building a helium recovery unit.  Compl. ¶¶ 27–28; Gov't App. A13.  Upon receipt of this data and after it "confirmed that it had received sufficient data," Rocky Mountain was required to pay $116,579.90 in accrued rental payments, fees, penalties, and interest.  Compl. ¶ 29; Gov't App. A13.  After payment and confirmation from Rocky Mountain that it intended to proceed, Interior would reinstate the Helium Contract.  Gov't App. A13.  Upon reinstatement, Rocky Mountain was obligated to resume annual rental/royalty payments to Interior.  Gov't App. A13.  If the Settlement Agreement was executed and helium production commenced, the parties would then sign a Second Administrative Modification that would authorize Rocky Mountain to extract helium from the lands identified in the June 5, 2003 First Administrative Modification. Gov't App. A22.  If Rocky Mountain failed to make the requested payment, within 90 days after delivery of the data, a Sunset Provision would be triggered requiring Rocky Mountain to release all claims, rights, and/or interest in or arising from the Helium Contract.  Gov't App. A13–16.

---

[2] On September 18, 2015, Plaintiff e-mailed a version that was not signed by any Interior official.  On September 22, 2015, the Government e-mailed a version that was signed by both parties.  ("Court Exhibit 'A' ").

According to Rocky Mountain, however, Interior "failed to provide [Rocky Mountain] with a sufficient and complete set of data[.]"  Compl. ¶ 30.  For this reason, Rocky Mountain did not pay the required rental payment.  Compl. ¶ 31.

On April 21, 2009, Interior invoked the Sunset Provision of the Settlement Agreement and informed Rocky Mountain that it "fully, finally and permanently terminated" the June 24, 1994 Helium Contract.  Compl. ¶ 32; Gov't App. A25.  Thereafter, Interior entered into a contract with another party to extract helium from the land.  Compl. ¶ 33.

## II.   PROCEDURAL HISTORY.

On April 1, 2015, Rocky Mountain ("Plaintiff") filed a Complaint in the United States Court of Federal Claims alleging breach of the Settlement Agreement by failing to provide sufficient data, breach of the Helium Contract's preferential rights provision, and breach of the covenant of good faith and fair dealing.  Compl. ¶¶ 36; 43; 45–47.

On May 19, 2015 and June 22, 2015, Defendant ("the Government") filed Motions For Extensions Of Time To Respond to the April 1, 2015 Complaint that the court granted.

On July 13, 2015, the Government filed a Motion To Dismiss ("Gov't Mot."), pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").  On August 7, 2015, Plaintiff filed a Response ("Pl. Resp.").  On September 8, 2015, the Government filed a Reply ("Gov't Reply").

On September 18, 2015, Plaintiff e-mailed to the court a copy of the June 5, 2015 First Administrative Modification that was unsigned by the Government.  On September 22, 2015, the Government e-mailed a copy of the June 5, 2015 First Administrative Modification that was signed by both parties.

## III.   DISCUSSION.

### A.   Jurisdiction.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Tucker Act, however, is "'only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.'"  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Testan*, 424 U.S. 392, 398 (1976)).  Therefore, to satisfy the jurisdictional requirements of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, or executive agency regulation that provides a substantive right to money damages.  *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself."); *see also Roth v. United States*, 378 F.3d 1371, 1384 (Fed.

Cir. 2004) ("Because the Tucker Act itself does not provide a substantive cause of action . . . a plaintiff must find elsewhere a money-mandating source upon which to base a suit.").

Whether the court has jurisdiction to adjudicate the claims alleged in the April 1, 2015 Complaint is discussed herein.

### B.     Standards Of Review.

#### 1.     Under RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction[.]"). When considering whether to dismiss an action for lack of subject-matter jurisdiction, "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the Complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997). The court may also consider evidence outside the pleadings when jurisdictional facts are in dispute. *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999) ("Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged."). As such, consideration of the Appendix to the Government's July 13, 2015 Motion To Dismiss is appropriate, because the documents contained therein provide the factual basis for whether the court has jurisdiction to adjudicate Plaintiff's claims. Likewise, Plaintiff included an identical Appendix in its August 7, 2015 Response.

#### 2.     Under RCFC 12(b)(6).

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . is raised by a [Rule] 12(b)(6) motion[.]" *Palmer*, 168 F.3d at 1313; *see also* RCFC 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]").

When considering whether to dismiss an action for failure to state a claim, the court must assess whether "a claim has been stated adequately" and then whether "it may be supported by [a] showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The plaintiff's factual allegations must be substantial enough to raise the right to relief "above the speculative level." *Id.* at 555. The court must accept all factual allegations in the complaint as true and make all reasonable inferences in favor of the plaintiff. *Id.*

### C.    The Government's July 13, 2015 Motion To Dismiss.

#### 1.    The Government's Argument.

The Government argues that because each of the three claims in the April 1, 2015 Complaint—breach of the Helium Contract, breach of the Settlement Agreement, and breach of the covenant of good faith and fair dealing—"are based on the same facts . . . and seek the same relief, the [c]ourt should consider them the same claim for purposes of determining jurisdiction." Gov't Mot. at 8.

First, to the extent Plaintiff's claims are based on the Helium Contract, "its right to go to the IBLA [Interior Board of Land Appeals] creates jurisdiction in the Federal district courts[,] because the district courts have exclusive jurisdiction [to] review IBLA decisions under the Administrative Procedure Act." Gov't Mot. at 12 (citing *Griffin & Griffin Exploration, LLC v. United States*, 116 Fed. Cl. 163, 172 (2014) ("Congress has invested the federal district courts with exclusive jurisdiction to review [Interior Board of Land Appeals] decisions pursuant to the Administrative Procedure Act.")).

Second, the Settlement Agreement is not money-mandating and, therefore, the court does not have jurisdiction under the Tucker Act to adjudicate Plaintiff's claims thereunder. Gov't Mot. at 8–11. "The [S]ettlement [A]greement requires that Rocky Mountain pay [Interior] because of its years of failure to pay rent on the helium lease, not the other way around. It creates no monetary duty [on Interior]." Gov't Mot. at 9–10. In addition, the Settlement Agreement requires that the parties resolve their disputes through the Civilian Board of Contract Appeals ("CBCA"), not the United States Court of Federal Claims. Gov't Mot. at 10 (citing Gov't App. A16 ("The parties agree that, except in the event of a triggering of the Sunset Provision described at item III(1) herein, disputes or disagreements arising from operation of this Agreement will be submitted to the . . . CBCA for [Alternative Dispute Resolution.]")).

The Government adds that this court should not exercise jurisdiction, because Plaintiff's claims are not ripe, since Plaintiff failed to exhaust its administrative remedies. Gov't Mot. at 11. Interior's regulations provide a right to appeal to the Interior Board of Land Appeals. Gov't Mot. at 11 (citing 43 C.F.R. § 4.410). "To the extent Rocky Mountain has any claims that the settlement agreement did not reserve for mediation at the CBCA, . . . the regulation permitted Rocky Mountain to appeal to the Interior Board of Land Appeals." Gov't Mot. at 11. Although exhaustion of administrative remedies is not a jurisdictional requirement, "it is 'desirable to let the agency develop the necessary factual background upon which decisions should be based.'" Gov't Mot. at 12 (quoting *McKart v. United States*, 395 U.S. 185, 194 (1969)).

In the alternative, the Government argues that Plaintiff failed to state a claim upon which relief can be granted, because the Government properly terminated the Helium Contract in 2004 and it never was reinstated. Gov't Mot. at 13–14. As for the Settlement Agreement, it provided only that the Helium Contract would be reinstated, if Plaintiff paid Interior $116,579.90. Gov't

App. A13–14. Because Plaintiff never paid that amount, the Helium Contract never was reinstated. Gov't Mot. at 14. Although it is true that Plaintiff had preferential rights over any new contract for one year after the termination of the Helium Contract, Interior entered into a new helium lease with a third party four to five years after the termination of the Helium Contract. Gov't Mot. at 14. As such, Interior did not breach Plaintiff's preferential rights under that contract. Gov't Mot. at 14.

Plaintiff also "failed to articulate any basis for its claim of damages." Gov't Mot. at 16. Plaintiff claims $100,000,000 in damages it is owed, but "has not explained how it has incurred any damages[.]" Gov't Mot. at 16. Such conclusory allegations are not sufficient to state a claim upon which relief can be granted. Gov't Mot. at 16 (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 680 (2009)). Also, Plaintiff's claims for legal fees are not permissible in breach of contract actions. Gov't Mot. at 17 (citing *SAB Const., Inc. v. United States*, 66 Fed. Cl. 77, 88 (2005)). And, Plaintiff's claim that it lost "rentals paid to the [Government]" is not supported in the record, because Plaintiff admitted that it never paid rent under the Settlement Agreement. Gov't Mot. at 17. Thus, the April 1, 2015 Complaint failed to allege facts sufficient to establish "lost profits." Gov't Mot. at 17–18.

Finally, the April 1, 2015 Complaint failed to "allege any facts that would support a breach of the covenant of good faith and fair dealing." Gov't Mot. at 14. Specifically, there is no statement of any facts or acts showing that the Government intended to interfere either with the Helium Contract or the Settlement Agreement. Gov't Mot. at 15.

## 2. Plaintiff's Response.

Plaintiff responds that none of the contracts at issue are required to be explicitly money-mandating. Pl. Resp. at 9. "No independent statute or money-mandating law need exist [for breach of contract claims]." Pl. Resp. at 9 (citations omitted). The same principle applies to the Settlement Agreement, because it is governed by contract law. Pl. Resp. at 10. And, because Plaintiff seeks damages exceeding $10,000, the United States Court of Federal Claims has exclusive jurisdiction over its claims. Pl. Resp. at 11 (citing 28 U.S.C. § 1346(a)(2)[3]).

---

[3] Section 1346, in relevant part, provides:

The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of: . . .

. . . .

Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort[.]

28 U.S.C. § 1346(a)(2).

Plaintiff also contends that the court has jurisdiction over contract claims and the Government has failed to establish that either of the two exceptions—when a contract "expressly disavow[s] money damages as a remedy" and "where the only remedies specified in the contract are non-monetary"—applies.  Pl. Resp. at 11–12.  In fact, the Settlement Agreement was "inherently related" to monetary compensation, because it was the basis for reinstating the Helium Contract.  Pl. Resp. at 12–13 (citing *Holmes v. United States*, 657 F.3d 1303, 1316 (Fed. Cir. 2011) (holding that "the [employment settlement] agreements inherently relate to monetary compensation")).

Plaintiff adds that it was not required to pursue administrative remedies through the CBCA and any attempt to do so now would be futile.  Pl. Resp. at 16–17.  "Even though [Plaintiff] had no obligation to exhaust its administrative remedies in the first place, it nevertheless did so in 2005. It appealed from the wrongful termination of the Helium Contract and pursued that process for a period of years, before it successfully negotiated a Settlement Agreement in 2008."  Pl. Resp. at 17.  "Nothing in the law mandates that [Plaintiff] try mediation or a second round of administrative appeals, especially where they could offer no meaningful relief."  Pl. Resp. at 17.  In fact, the Settlement Agreement provided that, *except* in the event that the Sunset Provision is triggered, disputes would be submitted to the CBCA.  Pl. Resp. at 15; *see also* Gov't App. A16 (emphasis added).  Since the Government invoked the Sunset Provision, the parties are not required to pursue dispute resolution before the CBCA.  Pl. Resp. at 15.

In the alternative, Plaintiff argues that the April 15, 2015 Complaint stated a claim for relief for breach of its preferential rights guaranteed by the Helium Contract.  Pl. Resp. at 17.  Although Interior terminated the Helium Contract in 2004, Plaintiff appealed that decision and the parties "finally settled in 2008."  Pl. Resp. at 19.  As such, the Helium Contract could not have been terminated in 2004, as the Government contends. Pl. Resp. at 19.  Instead, the Helium Contract was terminated in 2009, because the Settlement Agreement expressly reinstated it.  If Interior had leased helium rights before entering the Settlement Agreement, then the Settlement Agreement "would have been pointless[,] because the subject matter of the Helium Contract was destroyed." Pl. Resp. at 19.  Thus, by leasing helium to another buyer less than one year after invoking the Sunset Provision without affording Plaintiff a right of first refusal, Interior did not honor the Helium Contract's preferential rights provision.  Pl. Resp. at 18–19.

With regard to the good faith and fair dealing claim, Plaintiff argues that it has articulated sufficient facts to support this claim.  Pl. Resp. at 19.  First, a breach of the implied duty of good faith and fair dealing may occur "where a party 'acts in a commercially unreasonable manner while exercising some discretionary power under the contract.'"  Pl. Resp. at 21 (citing *Dotcom Associates v. United States*, 112 Fed. Cl. 594, 599 (2013)).  At the time the Helium Contract was formed, "[i]t was foreseeable . . . that cooperation from oil and gas lessees was essential."  Pl. Resp. at 21.  Moreover, when federal oil and gas lessees refused to allow Plaintiff access to recover helium, Interior "did nothing to assist" Plaintiff.  Pl. Resp. at 21.  Without cooperation from Interior, Rocky Mountain was not obligated to make the annual payments due.  Pl. Resp. at 21. Second, the Government did not provide a complete set of the data that it promised under the Settlement Agreement.  Pl. Resp. at 22.  In sum, Interior "acted commercially unreasonably and in bad faith to breach both the Settlement Agreement and the underlying Helium Contract."  Pl. Resp. at 22.

### 3.      The Government's Reply.

The Government replied that the preferential rights granted in the Helium Contract were no longer operative after the Helium Contract was terminated in 2004 and was never reinstated. Gov't Reply at 1.  Therefore, Plaintiff "failed to state a cognizable claim for a breach of the preferential rights clause of the helium lease because the preferential rights lasted only until 2005." Gov't Reply at 2–3.  The Government adds that the core of the April 15, 2015  Complaint is whether Interior met its responsibility to provide Plaintiff with the data under the Settlement Agreement.  Gov't Reply at 5.  But, the Settlement Agreement required that if Plaintiff did not pay the $116,579.90 due, the Sunset Provision would be triggered releasing Plaintiff's "claims, rights, and/or interest in or arising from [the Helium Contract] in their entirety."  Gov't App. A15–16. Plaintiff never paid, so Plaintiff cannot complain about reinstatement of the Helium Contract. Gov't Reply at 5.

But an agreement over whether sufficient data was provided by Interior "does not provide a right to money damages[.]"  Gov't Reply at 5.  The Government adds that, because the April 15, 2015 Complaint is based on whether Interior met its Settlement Agreement responsibilities, Plaintiff is obliged to utilize the dispute resolution procedure set forth therein.  Gov't Reply at 5–6.  Specifically, the Settlement Agreement provides that disputes, other than those concerning the Sunset Provision, must be submitted to the CBCA.  Gov't App. A16.  Since Plaintiff does not contest the Sunset Provision, but rather whether Interior properly fulfilled its Settlement Agreement responsibilities, Plaintiff must submit its claims to the CBCA.

Finally, the Government replies that Plaintiff did not "articulate the basis for its damages." Gov't Reply at 9.  Although the Government recognizes that notice pleading does not require a "full factual development in the complaint," Plaintiff "should be required to allege . . . the elements necessary for a lost profit claim[.]"  Gov't Reply at 9.

### 4.      The Court's Resolution.

This case concerns two interrelated contracts—the January 20, 1994 Helium Contract (Gov't App. A1–11) and the August 29, 2008 Settlement Agreement (Gov't App. A12–21).  Other relevant documents include: the June 5, 2003 First Administrative Modification to the Helium Contract (Court Exhibit A) and an undated and unsigned Second Administrative Modification, attached to the August 29, 2008 Settlement Agreement (Gov't App. A22–24).

The June 5, 2003 First Administrative Modification enlarged Plaintiff's helium extraction rights and provided that any dispute must be resolved with Interior's Director of New Mexico's BLM [Bureau of Land Management] State Office.  Court Exhibit A at 2.  The First Administrative Modification, however, became effective only upon Plaintiff's payment of accrued rentals, penalties, and interest.  As the April 1, 2015 Complaint states, Plaintiff never paid Interior after

July 31, 1995.  Compl. ¶ 22.  As such, the June 5, 2003 First Administrative Modification was inoperative.

The Second Administrative Modification, attached to the August 29, 2008 Settlement Agreement, provides: "Upon the satisfaction by RMH [Rocky Mountain Helium] of the obligations set forth in the Settlement Agreement, including the commencement of helium production . . . BLM shall sign and issue this Modification.  At such time, the Modification shall take effect and become valid and enforceable."  Gov't App. A22–23.  Plaintiff, however, never began helium operations and neither party signed the Second Administrative Modification.  Therefore, the Second Administrative Modification was inoperative.

Since both the June 5, 2003 First Administrative Modification and the Second Administrative Modification had no legal effect, the court will turn to the January 20, 1994 Helium Contract and the August 29, 2008 Settlement Agreement.

As to the January 20, 1994 Helium Contract, the court does not have jurisdiction over Plaintiff's claim that Interior breached Plaintiff's preferential rights, because Plaintiff does not have standing.  Standing is a constitutional limit on a federal court's jurisdiction.  *See Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979).  To satisfy the United States Constitution's Art. III's case or controversy requirement, the plaintiff must have suffered an injury-in-fact that is fairly traceable to the defendant's action and is likely to be redressable by a favorable court decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) ("First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical'.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'  Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"").  Although the United States Court of Federal Claims is not an Art. III court, this court applies the same test for standing.  *See Anderson v. United States*, 344 F.3d 1343, 1350 (Fed. Cir. 2003).

In this case, Plaintiff alleges that the injury it suffered is monetary damages stemming from Interior's breach of the Helium Contract's preferential rights provision.  This injury is allegedly traceable to Interior's decision to lease the helium rights to a different party less than one year after it terminated the Helium Contract.  Plaintiff, however, overlooks the fact that it was in default of the Helium Contract on August 1, 1996, when the annual rental payment was due.  Gov't App. A3; Compl. ¶ 22; Gov't App. A3.  As such, Plaintiff did not suffer injury-in-fact and does not have standing.

Even if Plaintiff was injured by loss of preferential rights, the April 15, 2015 Complaint failed to state a claim upon which relief can be granted.  On a RCFC 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true.  *See Bell Atl. Corp.,* 550 U.S. at 563.  The court, however, is not bound to accept as true a legal conclusion couched as a factual allegation.  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The April 1, 2015 Complaint alleges a breach of the Helium Contract.  The Helium Contract, however, was never reinstated, because the Settlement Agreement *conditioned* reinstatement on Plaintiff's payment of the

$116,579.90.  Specifically, the Settlement Agreement provided, "Upon receipt of the payment [Plaintiff's payment of $116,579.90 to Interior] . . . BLM shall formally reinstate the Contract." Gov't App. A13.  The Settlement Agreement also provided, "Upon the execution of this Agreement, or within a reasonable time thereafter, BLM agrees to provide RMH [Rocky Mountain Helium] with a 'Letter of *Intent* to Recover Helium and Reinstate Federal Helium Contract FLL94-001' wherein BLM will express its *intent* to reinstate the Contract upon RMH's fulfillment of the terms described in this Agreement."  Gov't App. A13 (emphasis added).  "When the contract language is unambiguous on its face, our inquiry ends, and the plain language of the contract controls."  *Hunt Construction Group, Inc. v. United States*, 281 F.3d 1369, 1373 (Fed. Cir. 2002). The plain language of the Settlement Agreement sets forth the terms that must be satisfied before the Helium Contract would be reinstated.  It did not provide that the Helium Contract automatically would be reinstated.  Plaintiff never paid the requisite $116,579.90 to Interior.  As such, a material  condition precedent to reinstating the Helium Contract was never satisfied.  Since the Helium Contract was never reinstated, Interior did not breach the Helium Contract's preferential rights provision.

To the extent that Plaintiff argues that Interior's insufficient data disclosure excused Plaintiff's performance to pay Interior: that is not so.  As the April 1, 2015 Complaint states, $116,579.90 was the amount that Plaintiff owed Interior from 1996 to 2004.  Compl. ¶ 6. Assuming *arguendo* that Interior did not provide sufficient data, that failure to perform did not excuse Plaintiff's obligation to pay the $116,579.90 it owed.  *See Haddon Housing Associates, Ltd. Partnership v. United States*, 711 F.3d 1330, 1339 (Fed. Cir. 2013) ("Absent a showing that HUD [the United States Department of Housing and Urban Development] took some action that prevented or hindered Haddon's ability to submit its requests, the prevention doctrine does not apply to excuse Haddon's failure to submit rent requests.").  Moreover, the plain language of the Settlement Agreement expressly conditioned reinstatement of the Helium Contract upon Plaintiff's payment of $116,579.90.  Since Plaintiff never paid, the Helium Contract was never reinstated. Consequently, Interior could not have breached the Helium Contract and Plaintiff cannot state a claim upon which relief can be granted.

This court also does not have subject-matter jurisdiction over the August 29, 2008 Settlement Agreement, because it does not have jurisdiction over contract claims where the contract provides for exclusive dispute resolution procedures.  *See Doe v. United States*, 513 F.3d 1348, 1355 (Fed. Cir. 2008); *see also Todd*, 386 F.3d at 1094.  Item III(3) of the Settlement Agreement provided: "[E]xcept in the event of a triggering of the Sunset Provision described at item III(1), disputes or disagreements arising from operation of this Agreement will be submitted to the Honorable Judge Allan Goodman at the CBCA for ADR [Alternative Dispute Resolution] pursuant to CBCA rule 54."  Gov't App. A16.  Item III(1) of the Settlement Agreement defines Sunset Triggering Events as, "nonpayment of the initial $116,579.90 . . .; failure to pay the O&G [Oil and Gas] Lessee's BLM-approved costs . . .; or failure to begin recovery of Helium within the timeframe . . . (all 'Sunset Triggering Events')[.]"  Gov't App. A15–16.  The April 1, 2015 Complaint alleges that Interior breached the Settlement Agreement by failing to provide sufficient data.  Compl. ¶ 36.  Assuming *arguendo* that this is true, that is a dispute about the operation of the Settlement Agreement instead of the Sunset Triggering Events.  As such, Item III(1) of the Settlement Agreement applies and Plaintiff's claim must be adjudicated at the CBCA not the United States Court of Federal Claims.

10

## IV.     CONCLUSION.

For the reasons discussed herein, the Government's July 13, 2015 Motion To Dismiss is granted.  *See* RCFC 12(b)(1); *see also* RCFC 12(b)(6).  The Clerk of the Court is directed to dismiss the April 1, 2015 Complaint.

**IT IS SO ORDERED**.

<u> s/ Susan G. Braden</u>
**SUSAN G. BRADEN**
**Judge**

FIRST ADMINISTRATIVE MODIFICATION OF CONTRACT BETWEEN

UNITED STATES OF AMERICA

and

ROCKY MOUNTAIN HELIUM, LLC

THE AGREEMENT ("Agreement") entered into between ROCKY MOUNTAIN HELIUM, LLC, a Colorado limited liability company ("RMH"), and the United States of America, acting through the UNITED STATES DEPARTMENT OF INTERIOR – BUREAU OF LAND MANAGEMENT ("BLM"), entered into June 24, 1994 and effective August 1, 1994, is hereby modified and amended as follows:

A.   **Federal Helium Agreement Lands – Area of Mutual Interest ("AMI").**  The lands covered by the Agreement are set forth in Exhibit "A" ("Said Lands").  So long as the Agreement is in effect, BLM shall not auction, solicit, or offer Federal helium extraction rights to third parties on any lands within the area of interest described in Exhibit "B" ("AMI Lands").  Pursuant to Sections 1.10, 2.2, and 7.2 of the Agreement, additional Producing Acreage, whether or not within the AMI Lands, shall be added to the Agreement by designation of such lands by RMH, and within 15 days thereafter the acreage so designated shall become subject to all the terms and conditions of the Agreement, as modified herein.

B.   **Prudent Operator.**  RMH shall act as a prudent operator to develop the AMI Lands for helium conservation and extraction from the natural gas streams produced from these lands, and to designate additional Federal lands to be added to the Agreement.

C.   **Designated Plant.**  Pursuant to Section 2.1 of the Agreement, the Badger Wash gas plant, located in Section 29, Township 8 South, Range 103 West, 6th P.M., Mesa County, Colorado, is the first plant designated by RMH to exercise its exclusive right and privilege to take possession of the Federal gas streams for the purposes of extracting helium produced from the Producing Acreage on Said Lands.

D.   **BLM Helium Gross Proceeds Purchase Price Payments.**  The purchase price to BLM for all Crude Helium extracted from natural gas produced and extracted from Contract Lands, including Producing Acreage added to the Agreement, shall be $5.00 per Mcf. Such purchase price is equal to nineteen percent (19%) of a base price for Crude Helium of $26.25 per Mcf.  For the purposes of calculating the purchase price, Crude Helium volumes shall be measured at the point where Crude Helium is first extracted from the gas steam.  The purchase price paid to BLM shall be free and clear of all costs of production, gathering, transportation, processing, compression, and from any other costs or expenses.

E.   **Price Adjustments.**  The purchase price for Crude Helium shall be fixed for a period of two (2) years from the date of first helium production.  Once per year thereafter, the purchase price for Crude Helium shall be adjusted proportionately, based upon a formula that reasonably reflects increases or decreases in the market price of Refined Liquid Helium. 2002 market prices for refined liquid helium (bulk) shall be the basis price for any price adjustments.  The provisions of Paragraph D., above, and this Paragraph E. supersede any inconsistent provisions of Section 4.1 of the Agreement.

F.   **Rights of Inspection.**  Under Section 13.1 of the Agreement, the right of BLM to inspect contracts or evidence of other arrangements for disposal of helium shall not extend beyond the point of first extraction and transfer of title of Crude Helium at any designated gas plant under the Agreement.

G.   **Resolution of BLM Contract Disputes.**  Dispute resolution regarding BLM's administration of the Agreement shall be by appeal to the Director of the New Mexico BLM state office, and shall be conducted according to Federal law.

H.   **Validity of Agreement.**  BLM confirms that, from the effective date of the Agreement on August 1, 1994, through and including the effective date of this modification, the Agreement is, and has always been, a valid contract of the United States of America, legally and properly awarded in a public Federal auction, and the Agreement continues in full force and effect according to its terms, and as modified herein.

I.   **Election to Terminate Agreement.**  In the event helium extraction facilities are under construction on or before August 1, 2004, the right to early termination set forth in Section 3.3 of the Agreement shall be deleted.

These modifications to the Agreement shall be made effective upon payment in full of all accrued rentals, penalties and interest within 90 days of the date both parties have executed these modifications (the "effective date").  All other terms and provisions of the Agreement shall remain the same.

ROCKY MOUNTAIN HELIUM, LLC

Christopher M. Sullivan, President            Date: MAY 2, 2003

This modification of Agreement is made effective as of 7.00 A.M. CST,

JUNE 5              , 2003.

BUREAU OF LAND MANAGEMENT

Timothy R. Spisak, Contracting Officer       Date: JUNE 5, 2003

Modification of Helium Extraction Contract
Page 3

## Exhibit "A"
### Federal Helium Agreement Lands -- FLL94-001

COLORADO

| Township | Range | Section | Federal Acreage |
|----------|-------|---------|-----------------|
| 8 south | 103 west | 31 | 454.36 |
| 8 south | 103 west | 32 | 620.96 |
| 8 south | 104 west | 34 | 640.00 |
| 8 south | 104 west | 35 | 640.00 |
| 8 south | 104 west | 36 | 640.00 |
| 9 south | 103 west | 5 | 641.05 |
| 9 south | 103 west | 6 | 641.59 |
| 9 south | 104 west | 1 | 941.40 |
| 9 south | 104 west | 2 | 938.84 |
| | | Subtotal: | 6,158.20 |

UTAH

| Township | Range | Section | Federal Acreage |
|----------|-------|---------|-----------------|
| 16 south | 25 east | 21 | 640.00 |
| 16 south | 25 east | 22 | 640.00 |
| 16 south | 25 east | 23 | 640.00 |
| 16 south | 25 east | 25 | 640.00 |
| 16 south | 25 east | 26 | 640.00 |
| 16 south | 25 east | 27 | 640.00 |
| 17 south | 25 east | 12 | 640.00 |
| 17 south | 25 east | 13 | 640.00 |
| 17 south | 25 east | 24 | 640.00 |
| 17 south | 26 east | 7 | 640.00 |
| 17 south | 26 east | 8 | 640.00 |
| 17 south | 26 east | 17 | 640.00 |
| 17 south | 26 east | 18 | 640.00 |
| 17 south | 26 east | 19 | 640.00 |
| 17 south | 26 east | 20 | 640.00 |
| 18 south | 25 east | 29 | 640.00 |
| 18 south | 25 east | 33 | 640.00 |
| 18 south | 25 east | 34 | 640.00 |
| 18 south | 25 east | 35 | 640.00 |
| 19 south | 25 east | 3 | 641.52 |
| 19 south | 25 east | 4 | 642.72 |
| 19 south | 25 east | 9 | 640.00 |
| 19 south | 25 east | 10 | 640.00 |
| 19 south | 25 east | 11 | 640.00 |
| | | Subtotal: | 15,364.24 |

Total Federal Mineral Acreage     21,522.44

4

## Exhibit "B"
## Area of Mutual Interest "AMI" for Helium Extraction on Federal Lands
## Contract No. FLL94-001

**Helium AMI Lands in Colorado**
Township 6 South, Range 102 West, 6th P.M.
Township 6 South, Range 103 West, 6th P.M.
Township 6 South, Range 104 West, 6th P.M.
Township 6 South, Range 105 West, 6th P.M.
(Corrective Survey)

Township 7 South, Range 102 West, 6th P.M.
Township 7 South, Range 103 West, 6th P.M.
Township 7 South, Range 104 West, 6th P.M.
Township 7 South, Range 105 West, 6th P.M.
(Corrective Survey)

Township 8 South, Range 102 West, 6th P.M.
Township 8 South, Range 103 West, 6th P.M.
Township 8 South, Range 104 West, 6th P.M.
Township 8 South, Range 105 West, 6th P.M.
(Corrective Survey)

Township 9 South, Range 102 West, 6th P.M.
Township 9 South, Range 103 West, 6th P.M.
Township 9 South, Range 104 West, 6th P.M.

Township 10 South, Range 103 West, 6th P.M.
Township 10 South, Range 104 West, 6th P.M.

Township 2 North, Range 2 West, 6th P.M.
Township 2 North, Range 3 West, 6th P.M.

**Helium AMI Lands in Utah**
Township 15 South, Range 22 East, SLM
Township 15 South, Range 23 East, SLM
Township 15 South, Range 24 East, SLM
Township 15 South, Range 25 East, SLM
Township 15 South, Range 26 East, SLM

Township 15.5 South, Range 24 East, SLM
Township 15.5 South, Range 25 East, SLM
Township 15.5 South, Range 26 East, SLM

Township 16 South, Range 22 East, SLM
Township 16 South, Range 23 East, SLM
Township 16 South, Range 24 East, SLM
Township 16 South, Range 25 East, SLM
Township 16 South, Range 26 East, SLM

Township 17 South, Range 22 East, SLM
Township 17 South, Range 23 East, SLM
Township 17 South, Range 24 East, SLM
Township 17 South, Range 25 East, SLM
Township 17 South, Range 26 East, SLM

Township 18 South, Range 22 East, SLM
Township 18 South, Range 23 East, SLM
Township 18 South, Range 24 East, SLM
Township 18 South, Range 25 East, SLM
Township 18 South, Range 26 East, SLM

Township 19 South, Range 22 East, SLM
Township 19 South, Range 23 East, SLM
Township 19 South, Range 24 East, SLM
Township 19 South, Range 25 East, SLM
Township 19 South, Range 26 East, SLM