# In the United States Court of Federal Claims

No. 15-336C

(Filed: November 19, 2019)

| | |
|---|---|
| **ROCKY MOUNTAIN HELIUM, LLC** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **UNITED STATES,** ) <br> ) <br> **Defendant.** ) <br> ) | Motion for reconsideration of decision granting summary judgment for plaintiff on liability in a remanded claim for breach of a settlement agreement; RCFC 54(b) |

Bryant Steven Banes, Neel, Hooper & Banes, P.C., Houston, TX, for plaintiff.

Jimmy S. McBirney, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With him were Joseph H. Hunt, Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Allison Kidd-Miller, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Senior Judge.

The government has filed a motion for reconsideration of the court's decision granting summary judgment for plaintiff on liability in this contract case pending before the court on remand from the United States Court of Appeals for the Federal Circuit.  In the current posture of this case, plaintiff Rocky Mountain Helium, LLC ("Rocky Mountain") is pursuing a claim that the government had breached a settlement agreement entered to resolve a dispute over the terms of a contract to extract helium from natural gas wells on federal lands.  That claim had been dismissed by another judge of this court for lack of subject-matter jurisdiction but then was revived on appeal, with a remand for further proceedings.  *See generally Rocky Mountain Helium, LLC*, 123 Fed. Cl. 551 (2015), *aff'd in part, rev'd in part, and remanded*, 841 F.3d 1320 (Fed. Cir. 2016).  After a hiatus, the case was transferred to the undersigned, and cross-motions for summary judgment on liability were brought before the court.  The government's motion for summary judgment was denied and Rocky Mountain's cross-motion was granted, *see Rocky Mountain Helium, LLC v. United States*, 145 Fed. Cl. 92 (2019), prompting the government to file its motion for reconsideration under Rule 54(b) of the Rules of the Court of Federal Claims ("RCFC").

In essence, the government raises the same arguments that it had made in the briefing on the cross-motions for summary judgment.  The court concludes that those contentions are equally unvailing at this juncture and accordingly denies the motion for reconsideration.

**BACKGROUND**

No helium was ever recovered pursuant to the underlying contract. After that contract had been in place for a decade, from 1994 to 2004,[1] it was cancelled, and Rocky Mountain filed an administrative appeal with the Civilian Board of Contract Appeals. *Rocky Mountain Helium*, 145 Fed. Cl. at 95. The dispute was resolved by entry of a Settlement Agreement that required the Bureau of Land Management ("BLM") to "direct" the O & G lessees to provide data on the content and quantity of gas produced from the wells, as specified in an exhibit to the Agreement, which data would then be provided to Rocky Mountain. *Id.*[2] After receiving and analyzing the data, Rocky Mountain was obliged to pay the arrears in its payments due to BLM and to reinstate the contract. *Id.*

BLM issued its direction to the O & G lessees, and they responded with some of the data called for in an alternative specified in an exhibit to the Settlement Agreement, but those data notably did not cover the volume of the helium contained in the vent gas stream emanating from the Badger Wash Gas Plant that processed the gas produced from the wells. *Rocky Mountain Helium*, 145 Fed. Cl. at 95-96 & n.2.[3] Rocky Mountain importuned BLM to fill this and other gaps in the data, without success. BLM insisted that it had provided Rocky Mountain with all of the data the O & G lessees had supplied, that some information did not exist, and that it had no obligation to generate or obtain further data. *Id.* at 96. BLM invoked a sunset provision in the Settlement Agreement to terminate it. *Id.* Rocky Mountain then brought its suit in this court alleging a breach of the Agreement.

After proceedings in the case resulted in the remand from the Federal Circuit, cross-motions for summary judgment were filed on liability *vel non* for breach of the Settlement Agreement. In acting on those motions, this court ruled that BLM had breached the Agreement because the data provided "were manifestly insufficient for any assessment of whether there was a commercially sufficient amount of helium in the vent gas stream from the Badger Wash Gas Plant, where helium would be present and potentially recoverable." *Rocky Mountain Helium*,

---

[1] The pertinent producing natural gas wells were located on approximately 21,500 acres of federal lands in Colorado and Utah, and were subject to leases between the United States and oil and gas lessees ("O & G lessees"). *Rocky Mountain Helium*, 145 Fed. Cl. at 94. The "lease agreements . . . reserved to the United States ownership of, and the right to extract, helium beneath the land." *Id.*

[2] The Settlement Agreement is set out in the record as an exhibit to the government's motion for summary judgment. *See* Def.'s Mot. for Summary Judgment on Liability, App. at 1-13, ECF No. 105-1, and will be cited as "Settlement Agreement."

[3] The Badger Wash Gas Plant processes the raw gas produced from the pertinent wells, separating natural gas for pipeline delivery, "Sold NGLs" (liquids comprised of ethane and higher hydrocarbons), and vent gas. *See Rocky Mountain Helium*, 145 Fed. Cl. at 95 n.2. The helium contained in the produced gas would be present in the vent gas emitted from the Badger Wash Gas Plant. *Id.*

145 Fed. Cl. at 100-101.  BLM had made "no effort to obtain at least partial or current vent stream volumes, and [had obtained and provided] only a very limited analysis[, *i.e.*, from a sample on one day] of the vent stream composition."  *Id*. at 101.  The Settlement Agreement had specified that the data would be "prepared consistently with industry standards and practices and verified by a qualified petroleum engineer and/or geologist."  *Id*. (quoting Settlement Agreement Ex. A § 2).  The complete omission of vent stream volume data contravened that requirement because the quantity of helium omitted by the vent stream could not be calculated by the limited data provided.  BLM thus was adjudged liable for breach of the Settlement Agreement.

Defendant's motion avers that BLM adhered to the Settlement Agreement by "direct[ing]" the O & G lessees to provide the data specified in the exhibit to the Settlement Agreement.  Def.'s Mot. for Recons. ("Def.'s Mot.") at 4.  When data about the vent stream were not forthcoming, the government contends that it had no further obligation under the Agreement to take steps to obtain the pertinent data.  *Id*. at 4-5.  The government argues that the court in effect "interpret[ed] the Agreement as requiring BLM to obtain data, rather than simply to 'direct' and then 'provide' data 'after its receipt thereof.'"  *Id*. at 5 (emphasis omitted).  The court disagrees.

## STANDARDS FOR DECISION

Pursuant to RCFC 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  RCFC 54(b); *see Marconi Wireless Telegraph Co. v. United States*, 320 U.S. 1, 47-48 (1943) (A court has power "at any time prior to entry of its final judgment . . . to reconsider any portion of its decision and reopen any part of the case."); *John Simmons Co. v. Grier Bros. Co*., 258 U.S. 82, 88 (1922) ("If [an order is] interlocutory, the court at any time before final decree may modify or rescind it.").  The rule reflects the precept that "[a]t an interlocutory stage, the common law provides that the court has power to reconsider its prior decision on any ground consonant with application of the law of the case doctrine." *Wolfchild v. United States*, 68 Fed. Cl. 779, 785 (2005).  In such circumstances, "the strict rules governing motions to amend and alter final judgments under Rule 59 do not apply." *Pacific Gas & Elec. Co. v. United States*, 114 Fed. Cl. 146, 148 (2013) (internal citations omitted).  In addressing a remand, the court is barred from addressing its prior rulings only if they have "been adopted, explicitly or implicitly, by the appellate court's judgment." *Exxon Corp. v. United States*, 931 F.2d 874, 877 (Fed. Cir. 1991).

In this instance, the Federal Circuit's remand to this court to address Rocky Mountain's claim of breach of the Settlement Agreement was based on reversal of a jurisdictional ruling, *see Rocky Mountain Helium*, 841 F.3d at 1326-27, and did not explicitly or implicitly constitute any ruling on the merits of Rocky Mountain's claim under the Settlement Agreement.  Therefore, the court has power to consider the government's motion for reconsideration.  In doing so, "[t]he decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Natural Res., Inc, v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990).

3

**ANALYSIS**

In its motion, the government acknowledges that the court correctly stated that the Settlement Agreement imposed limited obligations on BLM. Def.'s Mot. at 3. Those obligations initially focused on requiring BLM to "direct the O&G Lessees to provide [BLM with] the Data as described in Exhibit A [of the Settlement Agreement]." *Id.* (quoting *Rocky Mountain Helium*, 145 Fed. Cl. at 95). The government objects that it was not required "to *obtain* data, rather than simply to 'direct' and then 'provide' data 'after its receipt thereof.'" *Id.* at 5 (emphasis in original).

The Exhibit to the Settlement Agreement gave the O & G lessees two options in responding. They could provide raw data about gas composition of the produced gas (including helium content), well logs, and production records, and also the vent gas quantity, composition, temperature and pressure from the gas processing plant. *Rocky Mountain Helium*, 145 Fed. Cl. at 95. Alternatively, the O & G lessees could supply a report "prepared consistent with industry standards and practices verified by a qualified petroleum engineer and/or geologist," detailing current produced gas composition, vent gas composition, reserve estimates, quantities of gas produced by the O & G lessees during the past twenty-four months, and the monthly quantities of vent stream gases emitted from the gas processing plant during the same period. *Id.* at 95-96 (quoting Settlement Agreement, Ex. A ¶ 2).

When the O & G lessees chose the expert-report option rather than the raw-data option, and that report, although deficient, was provided to Rocky Mountain,[4] the government argues that BLM had no further responsibilities under the Agreement:

> [T]he fact that the Lessees turned out not to possess complete data sets under either paragraph [of Exhibit A to the Agreement] cannot reasonably be said to have rendered Exhibit A "useless, inexplicable, [or] inoperative . . . ." Indeed, Exhibit A's alternative system operated exactly as intended by allowing the Lessees to provide—and R[ocky Mountain] to therefore obtain—more data than would have been possible if BLM had directed the lessees to provide only the Data described in [the first, raw-data option under the Exhbit].

*Id.* In *Rocky Mountain Helium*, the court had considered that "[t]he government[']s understanding would . . . render ineffectual Exhibit A's alternative system." 145 Fed. Cl. at 99 (citing *State of Ariz., by and through Ariz. Dep't of Transp. v. United States*, 575 F.2d 855, 863 (Ct. Cl. 1978)). Thus, the government notes but largely sidesteps that the O & G lessees' invocation of the expert-report alternative, as the court put it, "gave the O & G lessees an alternative option to satisfy the information request if any of the raw data enumerated in [the first option] was unavailable or did not exist." Def.'s Mot. at 4 n.1 (quoting *Rocky Mountain Helium*, 145 Fed. Cl. at 96). The government concedes "that [the quoted court's] statement is true to a point." *Id.* It emphasizes that the expert-report alternative required "monthly quantities of Vent Stream gases vented" over the prior 24 month period" and those data were unavailable. *Id.*

---

[4]The expert report was submitted by Badger Midstream Services, LLC, the operator of the Badger Wash Gas Plant, on behalf of the O & G lessees. *See* Report of Badger Midstream Services, LLC set out at Def.'s Mot. for Summary Judgment on Liability, App. at 21-55.

(quoting Settlement Agreement, Ex. A ¶ 2). Those data might well have been unavailable, but the omission of *any* information about vent stream quantities rendered the so-called expert report virtually useless for Rocky Mountain's purposes because the amount of helium available for recovery could not be determined, even notionally or conceptually, pending more detailed compositional analyses and volumetric measurements of that gas stream.[5]

Moreover, the government ignores that BLM had the ability to direct the O & G lessees to rectify the omission of vent stream quantities by having the expert supplement its report with at least some current measurements on vent stream quantities, even if the historical data were unavailable. BLM made no effort to direct the O & G lessees to fill the gap. BLM did not need itself to gather data about vent stream quantities; it could direct the O & G lessees to do so. In short, this is not a case where the court "rewr[ote] the express provisions of the parties' Agreement in an after-the-fact effort to better facilitate th[e Agreement's] purpose than the language the parties agreed upon." Def.'s Mot. at 6. Rather, BLM failed to exercise effective direction to the O & G lessees, to the detriment of Rocky Mountain.

With such a significant omission of a central aspect of the data, the expert report provided also contravened the requirement that the expert report was to be "prepared consistent with industry standards and practices verified by a qualified petroleum engineer and/or geologist." Settlement Agreement Ex. A. ¶ 2. The report on vent stream quantities was insufficient under this benchmark as well.[6]

## CONCLUSION

For the reasons stated, the government's motion for reconsideration is DENIED.

On or before December 13, 2019, the parties are requested to provide a proposed plan and schedule for proceedings to address damages.

It is so **ORDERED**.

s/Charles F. Lettow
Charles F. Lettow
Senior Judge

---

[5]Other less significant required data were also omitted from the expert report. *See Rocky Mountain Helium*, 145 Fed. Cl. at 101 n.5.

[6]In its prior opinion, the court had cited a whereas clause of the Agreement as recognizing that "helium is a valuable resource," and that the purpose of the Agreement was to "facilitate the [future] 'recovery of helium.'" *See* Def.'s Mot. at 6 (quoting *Rocky Mountain Helium*, 145 Fed. Cl. at 99). The recitation of that purpose, however, was not the basis for the court's ruling that BLM had breached the Agreement. Indeed, courts do not interpret recitals as binding contractual obligations unless they are "stated in the form of an undertaking, not as a mere prediction or statement of opinion." *Chattler v. United States*, 632 F.3d 1324, 1330 (Fed. Cir. 2011) (quoting *Cutler-Hammer, Inc., v. United States*, 441 F.2d 1179, 1182 (Ct. Cl. 1971)).